Good morning, your honors. My name is Jerry Mowbray. I'm co-counsel on behalf of the appellants in this case. My co-counsel, John Erskotter, is also here present today. Just as a small note in reference to the court's discussion earlier this morning about Judge Snead, I was a law clerk for Judge Hugg 30 years ago, and I got to know him as one of the clerks, and he was a very fine man, and we all enjoyed the interaction that different clerks had with his clerks, and it's sad to see his passing, but he lived a good life. We're here today, your honors, because a terrible mistake was made, a deliberate mistake. Action was made by an employee of the state of Nevada's licensing investigative board that was not entitled to absolute immunity, and in this particular case, we're up on a motion to dismiss the counsel. Even if you were to prevail on the absolute immunity point, don't you still have a problem because the judge found qualified immunity? He did, and I believe that the court was in error in finding qualified immunity, and I could address that. Why don't you address qualified immunity now? Okay. Your honor, it's my understanding under the Harlow case, which is a case involving qualified immunity, that we have to prove three things. We have to prove that what the right was. Constitutional deprivation. That's correct. What is the constitutional violation here? The constitutional violation is that the actions of Mr. Kreider denied the appellants their business. He interfered with their right to maintain contracts. Is it a defamation? Is it a substantive due process problem? Is this a stigma plus case? How are you classifying this? Anything that looks familiar to us? Well, I think it's more than a stigma plus case. Is it a stigma plus plus case, or it's not a stigma plus case, it's something else? I think it's something else because he told Do you have any way of classifying, describing what you think that is if it's not a stigma plus case? Well, your honor, I don't know how to classify it in those terms, but he told the credit reporting bureaus that made statements, and as a result of that, they canceled the contracts they had with the appellants. They lost their ability to So what's the constitutional violation? I understand it might be tortious interference with business. It might be something else, but what's the constitutional violation here? I believe the constitutional violation is the fact that Let's start with the clause. Which clause of the Constitution does it violate? Well, it would come through the 14th Amendment, the right to engage in business Which clause of the 14th Amendment? Taking a property without due process of law, right? Yes. What's the property here? The property is that they lost their ability to engage in, to keep getting these credit reports and to stay in business. Well, sir, it appears to me that you either have to, in my view, have to have a stigma plus test, basically defamation plus some damage, or perhaps argue that under Nevada law, goodwill is property, and that goodwill was taken away from them by virtue of these actions. There may be another possibility, but those would seem to be the two that would come to mind. Well, I think that, plus the fact that they lost their source of supply. I found a case decided by Judge Betty Flesher called Serrano's Gasco. Are you aware of that case? No, Your Honor. That was a situation where, under California law, the court held that there is such a thing as business goodwill that rises to the level of a protected property right. And there the government advised gas stations that somebody did not have a permit or was not allowed to continue to do, to gas, to send gas to the gas stations. And that was incorrect. There was an issue there of a suspension, perhaps, for a period of time. But the government was absolutely wrong. There was a direct interference. Actual letters were written to the person's customers. And in that case, it seems like the Ninth Circuit said that that would be sufficient to trigger a property interest that, you know, would have to be remedied by some appropriate process. And then they went on to decide that the process thereafter, you know, was sufficient to constitute and satisfy due process. But it seems to me that that might be somewhat analogous to this case, government interference with somebody's goodwill or arguable contractual rights with these credit companies. But there was no remedy that allowed him to get those contracts back. He could appeal the citation process. Well, then the issue is what type of process is appropriate, post-deprivation, pre-deprivation. You had a citation here. So he, in this case, he had an opportunity to ultimately show that the government was wrong, that he did not have to be licensed. So at that particular time, he had the opportunity to be heard. And he was, you know, found to be correct. And he could have been notified to all his customers that there was no problem. So there was certainly a post-deprivation process here. The question is whether there should have cited him first before going to his customers. I guess that seems to me something that you might want to argue. Well, he made the false statements to the customers before the citation was issued. Yeah. It bothers me. That does bother me. But it seems to me that the Gasco case is something which has some courtesy here. I just point out to you that, you know, I was talking about the Arizona law situation, which involves some government deprivation. Here there's the interference by the government with a contractual relationship or goodwill. Do you know whether in the Arizona law, goodwill is a protectable property interest, as it is in California? I believe it is in Nevada, too. This is Nevada, right? Yes. It is. I don't know any law on that specifically. Well, we cited in our opening brief provisions in some case law in Nevada that talk about interference with contract and, you know, the different property rights that were violated, because it's my understanding that you have to show a deprivation of a federally protected right or some right that's protected by State law. By State law, yeah. Right. And that's where we start off with our question. WMX Technologies v. Miller is another case where we discussed Arizona's Gasco and the context of property damage. The plaintiffs didn't prevail in that case. But those would seem to be the two cases in the Ninth Circuit that deal with that. WMX was written by your former boss, Chuck. Okay. Were you his law clerk at that time? I don't think I was. I was a law clerk here a long time ago. I think Judge Leiby has a question. Yes. What was, what do we know about, is it Crider or Creter? I believe it's Crider. Crider. What do we know about Mr. Crider's calls to the three credit companies? Did he call all three? Yes. So that would be TransUnion, Equifax, and whatever the third one is. I think it's like TRW, isn't it? He called all the credit agencies. Did you depose him? Your Honor, there's been, that's the problem. We didn't get to take any depositions. We got shut down on a motion to dismiss the complaint without What do you know or what have you alleged about those conversations? What did he tell those companies? What we alleged, it's in the first event complaint beginning at page 6, paragraphs 12 through 14. He told them that the plaintiffs were violating state law by having these contracts and obtaining credit information. Did he tell, did he, did you allege or do you have any information or belief that he told them that those companies would be I believe that he intimated that in his conversations. If an investigator calls, I just want you to know that you're dealing with someone in improper fashion who's obtaining information in violation of the, by not having a license when they should. I mean, it's hand in hand that you're telling them that you're becoming an accomplice in this almost. Do you know whether if the credit companies were dealing with somebody who did not have a license, whether they would find themselves in violation of either Nevada law or federal credit reporting laws? Could you say that? Yeah. If you were dealing with Equifax and if Equifax were told by a Nevada investigator who said, you are dealing with someone who is not entitled to receive this information, is receiving this information in violation of Nevada law because he doesn't have a license. Do you have any evidence, do you have any citations, regulations, statutes, cases, that would suggest that Equifax then would have reason to believe that if it continued to deal with Mr. Lance, that it would be in violation of either Nevada law or the federal credit reporting laws? Well, what's alleged in the complaint is once they were provided that information by Mr. Crider, they called the plaintiff's office. It's clear that they canceled the contract. And it's alleged that they said the reason we're canceling you is because we've just been told that you're improperly licensed. You could do that because you say you're not entitled to receive the information and so that's not the kind of people that we want to deal with. That's different from, I'll use Equifax just because it's a name I can remember easily, but let's just use them as an example. But that's different from Equifax saying we cannot deal with you any further because if we do, we also, we will, ourselves will be in violation of either Nevada law or of the federal credit reporting laws. The latter is the situation in this case. It is the situation. Where the Equifax, the credit reporting agencies, once you're provided that information, they called Crider and informed them because of the information we provided, we cannot continue to provide information to you because you're operating in violation of Nevada law. Do you know whether they have any basis in law for taking that position? Well, I imagine when you look at the nature of this business, the credit reporting business, those credit reporting agencies are always concerned about violating the rights of privacy. Right. Have you looked into whether they in fact would be in violation of federal law if they did that? No. It seems to me that it might be useful or relevant to your case to know that because if they in fact were going to be or had good reason to believe that they were going to be in violation of either Nevada or federal law, then the information that they received would be quite damning. It would be quite damaging to the lances. Well, we weren't allowed to take depositions of Experian people and the credit reporting people because there was no discovery allowed in the case. But that's an issue of law. And it would be helpful, as Judge Biden suggests, that if there were consequences clearly that would be attended upon, Equifax is continuing to do business with somebody who is not licensed. Well, if Equifax – understand where the Court's coming from. If Equifax believed, and I assume they have their own internal, you know, attorneys, they – I don't know if – haven't done this discovery, but they're going to say, well, we just got information. We can't deal with these people anymore. It's a Toby Six case. And certainly Equifax, you know, would have been chilled by being told that they would be continuing to do business with somebody who was not entitled to do business. I mean, I don't know whether you need to go beyond that. Yes. And anyway, that's your argument. But your closest allegations, any of that, are found in paragraphs 12 and 13, am I right? Correct. Why did Mr. Kreider need to – do you have any sense as to why – I'm going to ask counsel for the State here the same question. Why did Mr. Kreider need to call them? I can't answer that, Your Honor. Once he had called one of them, why did he need to call three of them? I don't know the answer. We haven't done the discovery. It's a Toby Six case. Toby Six case. I think I know the – I was going to say, I think we have your arguments in hand. Do you want to save some time for rebuttal? Yes. Thank you. We'll hear from the State. Good morning, Your Honors. May it please the Court, my name is Frederick J. Perdomo, and I represent the appellees Mr. Kenneth Kreider and Ms. Carol Hanna. We're here today, this morning, because my client, Mr. Kreider, was doing his job, and the appellants think that entitles them to relief. Could he not have simply served with a citation? He knew or he believed that he was not, you know, licensed and he ought to have been licensed, and he could have cited him and it could have been flushed out without having him go to his customers. This presents an emergency situation because these credit bureaus hold people's private information. In Nevada, identity theft is a huge issue, and if this dissemination of information is allowed to continue, even for a day we risk people's personal information getting into the hands of people that don't have a license or are screened by the State of Nevada. So what was the purpose of Kreider's call to the companies? To stop the information from – So his intention when he called them was to stop them from giving information to the Lances? Absolutely. Temporarily. Did he tell them – do you have any reason to believe that he told them that those companies would be in violation of the law if they continued to deal with the Lances? Under Nevada statute, a private investigator is one who furnishes information and also obtains information. By furnishing information to the Lances, they were indeed conducting private investigations in the State of Nevada, which required a license and subject them to citations. That's the Lances. I'm interested in – I'm going to take Equifax as an example. I'm interested in Equifax's liability here. Did Kreider suggest to Equifax that if they continued to deal with the Lances, that Equifax would be in trouble under Nevada law or under the federal credit reporting laws? Absolutely. Maybe I'll be a little clearer. Furnishing information under Nevada law to the Lances requires a license. It requires a license. It requires them to obtain a private investigator's license. I think Judge Pai was asking a factual question rather than a legal question. Maybe I'm mistaken. But basically, the investigator told the credit agencies to stop giving information, and you were explaining, I gather, that you believe they were justified. Absolutely, Your Honor. This is a 12b-6 case, and I assume that that's the basis upon which you would defend the actions. But how are we supposed to take into consideration the emergency need in evaluating a 12b-6 dismissal? In this situation, again, it presents – it prevents – these credit bureaus hold information about people, their credit information, possibly their Social Security numbers, all of this. And private investigators may have access to this information through them, through their contracts. So this is an emergency situation. How are we supposed to know that on this record? We can't, but we can make a reasonable inference, which is allowed under a complaint. How much of an emergency can it be if under the Nevada law you don't require a license? Again, if this information, based on this fact – excuse me. Could you repeat that question again? No, no. You say it's an emergency, but you acknowledge that no license is required. So if under the Nevada law no license is required, I don't understand the logic of why you say there was an emergency situation that had to be dealt with. Well, it was his belief that they were accessing information that required a license. And by obtaining a license, that information can be anything about people's backgrounds. Lance was just wildly wrong on this. He just could not have been more wrong. I'm sorry, not Lance. Crider. Crider just couldn't have been more wrong on this question. So wrong that the Attorney General's office was willing to intervene and dismiss the complaint. It appeared that his boss had previously given advice to the Lances that they were entitled to receive this information. Now, on a 12b-6 motion, why aren't the Lances entitled to probe Mr. Crider's state of mind? He is wildly wrong here, and he has called every one of their suppliers and told them, as you've told us here today, very deliberately. They are to stop immediately. Their business then drops through the floor even though they get their licenses back. It's too late. They're done. But why aren't the Lances entitled to probe Mr. Crider's state of mind here? Mr. Crider was just, as we, our stance, the state's stance is Mr. Crider was just doing his job. And we're supposed to be able to tell that from the complaint? Absolutely. His statements to the credit bureaus were issued on the same day that he issued the citation. Now, that would work if Mr. Crider's entitled to absolute immunity. Does that still work if Mr. Crider's only entitled to potentially qualified immunity? The state's stance is that there was no constitutional deprivation. So we don't. But let me give you a situation. If Mr. Crider, in full knowledge that the Lances have been given the green light by his boss, that the Nevada statute plainly permits them to obtain this information from credit companies, calls the credit card companies, and tells them that they are to stop dealing with the Lances, we haven't got a stigma plus case here? Under the, in the complaint, what's alleged is that Mr. Crider called the credit bureaus and advised them that they But you told me, Mr. Perdomo, just a minute ago, that he called them, and this may be outside the record, but that was your representation to me, was that he called them with the intention of having them stop providing this information to the Lances because it would be a violation of Nevada law for them to do so. So he called them intending for them to do exactly what they did. My reasoning was based on the fact that there could be emergency situation presented here. That's what you're asking. Are you backing away from what you represented to me? I'm not backing away from the fact that an emergency situation was presented here. And that's why I made that. But based on the facts that are in it. Why doesn't your answer mean that we have to, if we get past absolute immunity, and I think it's, you've got a tough argument on absolute immunity. If we're talking about qualified immunity, don't we really have to dismiss or remand and allow the facts to be developed before district court can assess qualified immunity? Because your defense is that this is an emergency situation, but I don't see how we can get to that on the pleadings. Based on the pleadings and based on the briefs, and the cases cited in the briefs, Mr. Crider's actions would have had to have been excessive, unreasonable, and harassing to create a barrier. What they allege is that. To plead that his actions are outrageous, is that the problem? This can be amended by adding something to paragraph 12 that said that Mr. Crider's actions were outrageous? Well, something more than what they pleaded in here, where they had two chances to plead those facts, and they just alleged that he advised them that they were violating Nevada law. And advice, one single statement, only advice is neither excessive or harassing or unreasonable. Except that it was in the face of the teeth of the Nevada statute and an opinion that had previously been given to the Lances. It might be an opportunity for the Lances to be able to probe his motivations as to how he could have been so wrong under those circumstances. Based on the facts as alleged, Mr. Crider was acting within his statutory authority. Well, the other allegation that you've made is that Mr. Crider says that he was acting with the knowledge of his boss. Is that Ms. Hannah? Is that right? Yes. That he was acting with the knowledge of his boss, Ms. Hannah, who is the one who had previously provided an opinion to the Lances that what they were doing was lawful. Now, if Mr. Crider is credible on that point, then it appears that Ms. Hannah has both given advice to the Lances that it is lawful and told Mr. Crider to go and destroy their business. That's a reasonable inference from the record that might require some kind of exploration, shouldn't it? No, Your Honor, because in order for, again, under the cases cited by the appellants in their brief, even if that is true, his conduct to them has to indicate or conduct to the credit bureaus that there's an absolute barrier between them and their ability to perform their contracts. Whether Ms. Hannah gave this authority to Mr. Crider is not relevant at this point. It's the barrier or the perception of the credit bureaus and their ability to continue performing the contract with the Lances. At this point, based on the facts, he was merely advising them that they were conducting business in violation of Nevada statute. And that advice, again, is neither harassing, unreasonable, or excessive. And it would not lead somebody to believe that they were not able to continue performance of that contract. In fact, they didn't even take mitigating measures to call the credit bureaus and say, hey, we haven't been issued a citation. Until that citation is issued, we can still conduct business in Nevada. Why would they bother when they've just had an official from the PILB call them and tell them that they will be in violation? Why would Equifax take that risk? Since Mr. Crider has just called them and told them that they're going to be in violation of Nevada law if they continue to provide information to the Lances. Well, we don't know because the Lances didn't call the credit bureaus, so that's not alleged. This is all the Lances' fault? It's kind of an exhaustion of remedies problem? It's our stance that possibly a mitigating circumstance or that they were under a duty to mitigate until there was a citation issued. It's an odd constitutional principle you propose here. But go ahead. Anything else? It's our stance that he was merely doing his job. How is that a defense? I mean, one of the requirements of 1983 liability is you act under color of state law. So if we accept your proposition that he was just doing his job, there would never, ever be any 1983 liability, would there? Because you always have to have some connection with the state, right? Yes. And under absolute immunity, a decision to prosecute is also covered. It's really hard for me to see how absolute immunity applies here. I mean, he's an investigator. We've applied absolute immunity to formal prosecutors, but it seems to me a real stretch of the doctrine to apply it here. Under the functional analysis, we look to the person's function, and initiating a prosecution in the administrative setting is covered by absolute immunity. By issuing the citation, he began the process. Also, investigative activities necessary to yield information to decide to prosecute is also covered. In the complaint, he alleged only one single statement, one single contact with the credit bureaus. There's no other alleged contact with the credit bureaus. So the only information that we have is that that yielded necessary information for him to decide to issue the citation, which was issued on the same day. Also, a communication of a decision to prosecute is also protected by absolute immunity. And by contacting the credit bureaus and stating that he was going to issue a citation, he was, in fact, telling them that they would, that he was going to initiate or he had decided to prosecute. Also, he's entitled to qualified immunity at this time, too, because there was no constitutional deprivation. In order to have a constitutional, excuse me, in the opening brief, they admit that there was no legal barrier between them and their ability to exercise or to perform their contracts. So there would have to be an actual barrier between them. By calling once and telling them that they were violating Nevada law, that's not the type of action that our cases in this jurisdiction would state that or would necessarily create an absolute barrier between his ability to perform his contract or between the Lances and their ability to perform their contract with the credit bureaus. It's neither, again, neither harassing, excessive or unreasonable. Also, and then, excuse me, so then it brings up the question of pre-deprivation due process and whether he was required, whether the State was required to give them some sort of process before he made the statement. Again, it would have had to have been foreseeable for him to know for him, it would have had to have been foreseeable to him that his actions would cause a deprivation. Based on the facts here, again, they were neither excessive, harassing or unreasonable. Therefore, it could not have been foreseen that he would be denied due process or that his actions would cause a deprivation. And therefore, because it was not foreseeable, no pre-deprivation due process was required here. Finally, with respect to the citation, the citation involved the same issues of fact and law as the statement. And by conceding that the statement was given due process, resolution of one necessarily resolves the other. So after Nevada Attorney General dismissed their action against, dismissed the citation against the Lances, it also resolved the validity of the statement by Mr. Kreider. There are any further questions? Oh, I think we have your argument in hand. Thank you. Thank you very much. I'll give you a bit of time for rebuttal. Go ahead. May I ask you this question? I'm concerned about the concept of the process. Ultimately, he was cleared. So his good name, if you deal with it as a reputational type of concept or stigma plus, or even if you talk about basic concepts of governmental interference with goodwill, there was a process that evolved. Namely, he was cited and he was cleared. So at that particular time, he could go to all of the Equifax people to say the government was wrong. I've been cleared officially. Isn't that sufficient to satisfy the 14th Amendment? Well, what happened in this case, and, again, we're kind of outside the pleadings, but what happened is they canceled the contracts. In order to get the contracts back, the credit reporting agency says we're going to renegotiate the terms. You've got to pay a lot more for each credit report you get now than you would have had to pay because they wiped the slate clean. So he was damaged that way. And then also he lost the people that he was dealing with when he was unable to provide them with the credit information. They went to other investigative companies. We have to flush out factually whether a hearing, pre-deprivation or post-deprivation, is indicated under the facts and circumstances of this particular case under the Due Process Clause. I think we need to flush out those facts, and the way to do that is to allow us to do some discovery. Well, is it your theory on pre-deprivation that the State should have given your clients an opportunity, well, before going to the credit agencies, that the claim should have been adjudicated? I couldn't hear you. I'm sorry. Is it your pre-deprivation due process claim that before going to the credit agencies, that your client should have been afforded a hearing or go through the administrative process formally and an opportunity to contest the claim? Is that your pre-deprivation? Yes, Your Honor. I see. Okay. And so the damage you allege, you say if, in fact, you had given us a pre-deprivation hearing by completing the administrative process, before going to the credit agencies, we would have been able to clear our name, no damage would have occurred and so forth. Right. Okay. What was the interval of time from the time that Crider went to the Equifax people and the time that he was cleared, your client was cleared? I believe it was about 60 days, about two months. So during that two-month interregnum, then obviously he was damaged and he lost, you know, I guess some significant income. I imagine that would be part of the allegation in the 12B6 context, right? That's correct, Your Honor. So I gather, I know we're outside the record, but I think it helps to kind of see where the case may or may not be going. Your position is that if the state raised mitigation, you would be able to show that your clients took mitigating, did try to mitigate their damages, I assume? They, in fact, did try to do that. Okay. And then secondarily, I assume that you would contest the State's claim made here today that there was an emergency situation that excused the due process going through a hearing before committing the, what you say is a constitutional deprivation. Yes, Your Honor. And in that regard, all Mr. Crider had to do is read NRS 648.018 sub 6, which expressly provides that licensing requirements do not apply to this type of activity. Had he done that, this would have never happened. I mean, I would think that these investigators would take a course and learn what the statutes are. Do you have a theory as to why Mr. Crider took this action? We do. It's not in the record. And it's not pled. Well, other than we pled in the complaint that he acted intentionally, willfully, with malice. Where did you allege that? Yes, Your Honor. I may have overlooked that. And I believe it's paragraph 34. It says, The acts of Defendant Crider as before described were intentional, wanton, malicious, and oppressive. It's in the context of a punitive damages claim. Okay. I do see it. So, although we're not going to resolve any of those issues today, I gather that you believe that that's just not generic pleading, that you have a theory behind that of an intentional act, intent to deprive. We do, Your Honor. Okay. We have a strong factual basis to support those allegations. There was a third party involved here, a competitor. A competitor of Mr. Lance's, who ended up getting the business. Well, I'm not so sure you have to show that. We have odd recklessness and things. Yes. Right. No, but we've asked you. I realize you're trying to stick to the record. Yes. And we've asked you to go a little bit beyond just to clarify where the case might go. Sure. Do you have anything else you want to? No, Your Honor. Okay. Thank you for your time. The case just heard will be submitted for decision. Thank you both for your argument. Thank you.
judges: Thomas, Bybee, Block